**Francis G. Fanning**
**Attorney at Law**
500 E. Southern Avenue, Suite B
Tempe, Arizona 85282
(480) 731-9142
State Bar No. 5419
fanning@azbar.org
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry Dawson,<br><br>              Plaintiff,<br><br>         v.<br><br>AKAL Security, Inc.,<br><br>              Defendant. | No.<br><br>**Civil Complaint**<br><br>**JURY TRIAL DEMANDED** |

The Plaintiff, by and through his attorney, alleges:

**JURISDICTION**

1. This Court has jurisdiction over Plaintiff's complaint by virtue of 28 U.S.C.§1331, the federal question at issue arising from the fact that Plaintiff's complaint is based upon the Americans with Disabilities Act, 42USC§12101 et seq., and the Rehabilitation Act, 29 U.S.C. §701 et seq.

Dawson v. AKAL Security
Complaint - Page 1

**Francis G. Fanning**
**Attorney at Law**
500 E. Southern Avenue, Suite B
Tempe, Arizona 85282
(480) 731-9142
State Bar No. 5419
fanning@azbar.org
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Larry Dawson,<br><br>              Plaintiff,<br><br>         v.<br><br>AKAL Security, Inc.,<br><br>              Defendant. | No.<br><br>**Civil Complaint**<br><br>**JURY TRIAL DEMANDED** |

The Plaintiff, by and through his attorney, alleges:

**JURISDICTION**

1. This Court has jurisdiction over Plaintiff's complaint by virtue of 28 U.S.C.§1331, the federal question at issue arising from the fact that Plaintiff's complaint is based upon the Americans with Disabilities Act, 42USC§12101 et seq., and the Rehabilitation Act, 29 U.S.C. §701 et seq.

Complaint - Page 1

## VENUE

2. Venue in the District of Arizona, Phoenix Division, is proper because the facts alleged herein occurred in Pinal County, Arizona.

## FACTS COMMON TO ALL COUNTS

3. From February, 2009 until some time about October, 2010, Plaintiff Larry Dawson (hereafter "Dawson") was an employee of Defendant AKAL Security, Inc. (Hereafter "AKAL") as the term "employee" is defined in the Americans with Disabilities Act, 42 U.S.C. §12111(4).

4. AKAL is a foreign corporation that was doing business in Pinal County, Arizona when the events alleged herein occurred. AKAL was an "employer" as that term is defined in the ADA, 42 U.S.C. §12111(5)(A).

5. During his employment with AKAL, Dawson served as an armed security officer. He performed his duties successfully, and was qualified to perform all of the essential functions of the job.

6. Throughout his employment and until the present, Dawson has suffered from a sleep disorder. The disorder meets the definition of "disability" as defined in 42 U.S.C. §12102 in that it substantially impairs the major life activities of sleeping and, consequently, being alert and attentive during waking hours when his sleep has been disrupted. The condition did not require accommodation as long as Dawson was scheduled to work a day or swing shift, and from the time he was first employed until on

or about May 27, 2009, Dawson worked without difficulty on one of these shifts.

7. On or about May 27, 2009, Dawson's schedule was changed, requiring him to work the night shift, which runs from 10:00 p.m. to 6:00 a.m. This shift change, combined with a significant amount of overtime, resulted in Dawson having only about sixteen hours of sleep in an entire week in early June, 2009. When he was instructed to work an additional four hour overtime shift on June 4, 2009, he objected, and advised his superiors of his lack of sleep resulting from the schedule change.

8. Dawson advised the union steward and eventually his superiors of the fact that he had previously had difficulties on account of the sleep disorder, and he asked to be allowed to return to his old schedule. AKAL refused to consider this request for accommodation. On June 5, 2009, Dawson was told that he was being placed on paid administrative leave. Within a few days, this was changed to unpaid leave.

9. Shortly after being suspended, Dawson experienced severe chest pains for which he was treated at an urgent care facility. He was diagnosed with extreme exhaustion. Dawson was released to return to work on or about June 12, 2009. At that time his doctor recommended that his condition be accommodated by returning him to the daytime or swing shifts that he had been working prior to the shift change.

10. For the period between approximately June 5, 2009 and August 20, 2009, Dawson was not allowed to return to work because AKAL would not accommodate his disability. During that time, Dawson submitted several reports from his doctors and

underwent an independent medical examination to establish his disability and the need for accommodation.

11. On or about July 30, 2009, AKAL agreed in principle to accommodate Dawson's disability with a daytime schedule, but continued to require that he work up to four hours of overtime as needed, which would have resulted in him working well into the graveyard shift, risking another bout of sleep disorder and the resulting medical problems. Dawson signed a written agreement to this effect on July 31, 2009, indicating that he was signing the document under protest. He was not allowed to return to work until on or about August 20, 2009.

12. As a proximate consequence of AKAL's treatment of Dawson, Dawson has suffered a loss of earnings and benefits, as well as extreme frustration, emotional distress, humiliation and embarrassment.

13. Dawson filed a charge of disability discrimination and retaliation with the Equal Employment Opportunity Commission, and on October 25, 2010, the EEOC issued a determination that found reasonable cause to believe that a violation of the ADA occurred on account of AKAL's refusal to accommodate Dawson and on account of the suspension of his employment in retaliation for his request for accommodation.

**COUNT ONE - DISABILITY DISCRIMINATION**

14. Dawson incorporates by reference the foregoing allegations.

15. Throughout his employment with AKAL, Dawson was a qualified individual

with a disability as defined by the ADA, 42 U.S.C. §12111(8).

16. Dawson's condition described above constituted a disability as that term is defined in 42 U.S.C. §12102(2)(A), (B) & (C).

17. AKAL discriminated against Dawson on account of his disability by failing to accommodate his disability. Although he had successfully performed the essential duties of his position for several months while working daytime shifts, AKAL unreasonably refused to allow him to continue working these shifts, while other nondisabled employees were allowed to work these shifts.

18. AKAL further discriminated against Dawson by forcing him to continue on unpaid leave when he had been released to return to work without restrictions other than the requested accommodation.

19. AKAL further discriminated against Dawson by suspending his employment without cause to believe that any business necessity required this suspension. This decision was motivated in substantial part by prejudice on account of his disability.

20. Dawson has satisfied the administrative requirements of 42 U.S.C. §12117(a) by filing a timely complaint of discrimination with the Equal Employment Opportunity Commission and has received a notice of right to sue.

**COUNT TWO - ADA RETALIATION**

21. Dawson reincorporates the allegations of paragraphs 1 through 13.

22. Dawson alleges further that AKAL unlawfully retaliated against him in

violation of 42 U.S.C. §12203 for his having asserted rights protected by the ADA.

23. AKAL's unlawful acts of retaliation include its act of demanding that he undergo unnecessary medical testing, and its decision to suspend his employment.

24. Dawson has satisfied the administrative requirements of 42 U.S.C. §12117(a) by filing a timely complaint of discrimination with the Equal Employment Opportunity Commission and has received notice of right to sue.

**COUNT THREE - VIOLATION OF REHABILITATION ACT**

25. Dawson reincorporates the allegations of paragraphs 1 through 24.

26. Dawson alleges further that AKAL receives federal funds as a federal contractor as described in 29 U.S.C. §793, and is thus required to operate its programs and activities without discrimination on account of disability as provided by 29 U.S.C. §794.

27. The actions of AKAL as described above violate the provisions of 29 U.S.C. §794, and entitle Dawson to recover damages and equitable relief as provided by 29 U.S.C. §794a.

**PRAYER FOR RELIEF**

WHEREFORE, Dawson prays for this Court to grant the following relief:

A. An award of back pay in the amount he shall prove at trial to equal his loss of earnings and benefits on account of the suspension of his employment;

B. An award of damages in such amount as she shall prove at trial to have resulted from AKAL's unlawful acts as authorized by 42 U.S.C. §§12117 &

1981a(a)(2);

C. An award of punitive damages sufficient to deter AKAL's continued willful and reckless disregard of Dawson's federally protected rights as authorized by 42 U.S.C. §1981a(b)(1);

D. An award of attorney fees, expert witness fees and costs as authorized by 42 U.S.C. §1988 and 29 U.S.C.§794a(b);

F. Such other and further relief as this court deems just and equitable.

Dated this 4th Day of March, 2011.

 S/ Francis G. Fanning
Francis G. Fanning
500 E. Southern Avenue, Suite B
Tempe, Arizona 85282
(480) 731-9142
State Bar No. 5419
fanning@azbar.org
Attorney for Plaintiff